1  Kevin J. Stoops (State Bar #332200)
2  SOMMERS SCHWARTZ, P.C.
   1801 Century Park East, Ste. 860
3  Los Angeles, CA 90067
   Telephone: (310) 579-0600
4  Email: kstoops@sommerspc.com

5  Attorneys for Plaintiff JEANNE BATCHELDER

6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 JEANNE BATCHELDER,              :    **CLASS AND COLLECTIVE ACTION**
   individually and on behalf of all :    **COMPLAINT**
12 others similarly situated,       :
                                    :    **JURY TRIAL DEMANDED**
13                                  :
14              Plaintiff,          :    Case No:
                                    :
15 v.                               :    Hon.
                                    :
16                                  :
   GAINWELL TECHNOLOGIES,           :
17 LLC, a California limited liability :
   company,                         :
18                                  :
19              Defendant.          :
                                    :
20

21          <u>**CLASS AND COLLECTIVE ACTION COMPLAINT**</u>

22

23      Plaintiff, Jeanne Batchelder ("Plaintiff"), individually and on behalf of all

24 others similarly situated, by and through her undersigned attorneys, hereby brings

25 this Class and Collective Action against Gainwell Technologies, LLC,

26
   ("Defendant") to recover unpaid wages, liquidated damages, interest, attorney's fees,
27
28 costs, and other relief as appropriate under the Fair Labor Standards Act ("FLSA")

                              1

29 U.S.C. §§ 201 *et seq.* and common law. Plaintiff's allegations herein are based upon knowledge as to matters relating to herself and upon information and belief as to all other matters.

## JURISDICTION AND VENUE

1.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

2.     Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

3.     Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

4.     Plaintiff's breach of contract and unjust enrichment claims originate from the same facts that form the basis of her federal claims.  Thus, the Court has supplemental jurisdiction over Plaintiff's common law claims pursuant to 28 U.S.C. §1367.

5.     Venue lies in this District pursuant to 28 U.S.C. § 1391 because the Defendant is incorporated and conducts business within the State of California, has

**CLASS AND COLLECTIVE ACTION COMPLAINT**

a registered address in this District and is subject to personal jurisdiction in this District.

## PARTIES

6.    Plaintiff, Jeanne Batchelder ("Plaintiff"), is an adult resident of Brooksville, Florida and was employed by Defendant as a remote Customer Service Representative between April 10, 2023 and April 18, 2024. As of April 18, 2024, Plaintiff was reassigned to a Drug Rebate Analyst role and stopped working on the call center team.  Plaintiff's consent to joint form is attached as **Exhibit A**.

7.    Additional putative Collective members were or are employed by Defendant in the United States as hourly employees during the past three years and their consent forms will also be filed in this case.

8.    Defendant, Gainwell Technologies, LLC, is a California limited liability company with its principal office located in Texas at 5651 High Point Drive, Irving, Texas, 75038. Defendant employs hundreds of Customer Service Representatives ("CSRs") as hourly employees across the United States.

9.    Defendant's registered agent is CT Corporation System, with a registered address of 330 N. Brand Blvd., Suite 700, Glendale, CA 91203.

## GENERAL ALLEGATIONS

10.    On or about April 10, 2023, Defendant hired Plaintiff as an hourly non-exempt employee. Plaintiff works remotely from her home in Brooksville, Florida.

11.    Plaintiff's last hourly rate of pay while working for the call center team

**CLASS AND COLLECTIVE ACTION COMPLAINT**

was $21.00.

12.    As non-exempt employees, Defendant's hourly employees were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

13.    Throughout their employment with Defendant, Plaintiff and the other CSRs' job duties included fielding inbound calls and performing a wide range of support services to those callers with questions.

14.    Once hired, Defendant provides all CSRs with training on, inter alia, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time; the importance of attendance and schedule expectations; and Defendant's policies related to each topic.   The training Defendant's CSRs receive is substantially, if not entirely, the same and all CSRs are subject to the same disciplinary policies.

15.    Plaintiff and other similarly situated CSRs are instructed to be "phone ready" the moment their scheduled shift starts. This requires Defendant's CSRs to be logged in and have loaded their essential work-related computer programs and applications at the start of their shift so they can be prepared to take calls the moment their shift begins.   A CSR's failure to be "phone ready" could result in poor performance evaluations, warnings, discipline, and possibly termination. Thus,

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Defendant forces its CSRs to perform the boot-up and login process before clocking into Defendant's timekeeping system.

16.     All of Defendant's CSRs use the same or similar computer networks, software, programs, and applications in the course of performing their job responsibilities. These programs and applications are an integral and indispensable part of the CSRs' work and they cannot perform their jobs without them.

17.     Once training is completed and to perform their job duties, Plaintiff and all other CSRs are required to boot up and log into various computer networks, software programs and applications, in order to access information necessary to perform their job functions. However, Plaintiff and all other CSRs are instructed to not actually "clock in" for their shifts until after the computer boot-up and login process is complete or nearly complete.

18.     Plaintiff and all other similarly situated CSRs are also trained or instructed to "clock out" before closing all work applications and systems to make certain they are "clocked out" the moment they are done fielding calls.

19.     The pre-, mid-, and post-shift off-the-clock time Plaintiff and all other CSRs spend booting up, logging in, and logging off their computers directly benefits Defendant and is integral and indispensable to the CSRs' job responsibilities.

20.     Despite knowing Plaintiff and all other CSRs perform this pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

**CLASS AND COLLECTIVE ACTION COMPLAINT**

21.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs boot up and log into their computers each day, along with the time they log into their telephone systems.

22.     Because Defendant requires its CSRs to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spend working for Defendant.  Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

23.     Defendant's CSR positions typically had schedules that require employees to work at least eight (8) hours per day (with a thirty (30) minute unpaid meal period), on average five (5) days each week, and up to forty (40) hours or more in a workweek.  However, in some workweeks, Defendant's CSRs work less than forty (40) hours in a week and in other weeks they work more than forty (40) hours. If Defendant's CSRs strictly adhere to Defendant's baseline forty (40) hour schedule, the CSR schedule results in CSRs working overtime on a weekly basis.

24.     Despite its ability to track the amount of time Plaintiff and other CSRs spend in connection with the pre-, mid-, and post-shift boot-up, login, and log-out processes, Defendant failed to pay Plaintiff and other CSRs for the off-the-clock work they performed each shift, thus breaching its contracts with its CSRs.

25.     Plaintiff and similarly situated CSRs regularly worked overtime and non-overtime hours for which they were not paid.

**CLASS AND COLLECTIVE ACTION COMPLAINT**

26.    During the weeks that CSRs do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of straight-time wages, in breach of Defendant's contracts with its CSRs.

**A. Pre-Shift Off-the-Clock Work**

27.    Like most call centers, Defendant maintained detailed attendance and schedule adherence policies and used them to evaluate its CSRs' job performance.

28.    Defendant uses its attendance/schedule adherence policies to require its CSRs to arrive early and work off-the-clock so they can be "phone ready" at the start of their shifts.

29.    Throughout their employment with Defendant, Plaintiff and other CSRs were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

30.    Upon arriving to their home computer, Defendant's CSRs were trained and required to follow a specific protocol to start up and log into the company's computer network and numerous software programs to access the necessary information to perform their work.

31.    The pre-shift boot-up and login process generally consisted of the following steps:

    a. The CSRs turned on their computer from a complete shut-down state;

    b. The CSRs then logged into their computer with Windows username and password;

**CLASS AND COLLECTIVE ACTION COMPLAINT**

c. The CSRs then connected to Defendant's VPN via Avanti using two-factor authentication;

d. The CSRs opened Microsoft Outlook (e-mail) and Teams (chat);

e. The CSRs opened NICE to review their daily schedule and assigned breaks;

f. The CSRs launched VUE 360 process manager to reference patient demographics and information necessary to complete phone calls;

g. The CSRs opened Genius reference guides to navigate requests during phone calls;

h. The CSRs then logged into the IEX software, to review and monitor their quality assurance assessments;

i. The CSRs launched the FormWorks data entry software;

j. The CSRs then opened the SAP timekeeping software and entered their shift start time;

k. The CSRs then launched Max, the phone software, and marked themselves "Ready" to take calls.

32.    The boot-up and login process described above took substantial time on a daily basis, ranging from ten (10) to fifteen (15) minutes per shift, or more, depending on how fast/slow the computers and programs were operating.

33.    CSRs were required to complete each of these tasks prior to "punching in," as CSRs could not be "phone ready" until these tasks were complete.

34.    Defendant's CSRs did not actually "clock in" for their shifts until the start of their scheduled shifts; meaning that Plaintiff and all other CSRs worked off-the-clock for at least ten (10) to fifteen (15) minutes (or more) before each shift for

**CLASS AND COLLECTIVE ACTION COMPLAINT**

which they were never compensated.

35.    If CSRs logged in immediately prior to their scheduled shifts, they were in danger of clocking in late if they could not complete the required pre-shift work necessary to be "phone ready" when their scheduled shifts began, and they would therefore receive a tardy on their records and poor schedule adherence scores.

36.    Because Defendant's CSRs typically worked scheduled shifts of at least forty (40) hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

37.    Defendant had express and constructive knowledge that its CSRs began the pre-shift boot-up and login process while off-the-clock to make sure they were "phone ready" and "clocked in" on time.

38.    Defendant's CSRs were not compensated for any of this time because Defendant prohibited CSRs from clocking into its timekeeping software before the start of their scheduled shifts.

39.    The pre-shift off-the-clock work performed by CSRs directly benefitted Defendant, and was integral and indispensable to their job duties and responsibilities as CSRs.

**B. Mid-Shift Off-the-Clock Work**

40.    Defendant provided its CSRs with a scheduled thirty (30) minute unpaid meal period during each work shift.

41.    However, Defendant also required its CSRs to perform off-the-clock

**CLASS AND COLLECTIVE ACTION COMPLAINT**

work during these unpaid meal periods, including returning from the thirty (30) minute meal period approximately three (3) to five (5) minutes early in order to have enough time to log back in to Defendant's programs and software prior to resuming their shifts. This process was similar to the pre-shift login process described above (albeit abbreviated), and this time went unpaid.

42.    According to the U.S. Department of Labor, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked. Bona fide meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal."[1]

43.    The mid-shift off-the-clock time worked by Defendant's CSRs directly benefitted Defendant and the process was an integral and indispensable part of the CSRs' job responsibilities.

44.    Because Defendant's CSRs typically worked scheduled shifts of at least forty (40) hours per week, their required mid-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

45.    Defendant had express and constructive knowledge that its CSRs took unpaid meal periods and that its CSRs also performed mid-shift off-the-clock work during those unpaid meal periods in order to make sure they were "phone ready" and

[1] DOL Fact Sheet #64: Call Centers under the FLSA. https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last visited 9/11/2024).

**CLASS AND COLLECTIVE ACTION COMPLAINT**

"clocked in" on time for their shifts to resume.

46.    Despite having express and constructive knowledge of its CSRs' mid-shift off-the-clock work, Defendant failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to its CSRs.

**C. Post-Shift Off-the-Clock Work**

47.    Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs are required to "clock out" of Defendant's timekeeping system before closing all work applications and systems to make certain they are "clocked out" the moment they stop fielding calls.

48.    The off-the-clock post-shift process takes substantial time on a daily basis, with said time ranging from five (5) to seven (7) minutes per shift.

49.    Defendant's CSRs also were not paid for their post-shift off-the-clock work.

50.    The post-shift off-the-clock work Plaintiff and other CSRs performed was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as CSRs.

**D. The Off-the-Clock Work Resulted in Viable "Gap Time" Claims**

51.    "Gap time" refers to time that is not covered by the FLSA's overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the minimum wage provisions because, even though it is uncompensated,

**CLASS AND COLLECTIVE ACTION COMPLAINT**

the employees are still being paid minimum wage when their salaries are averaged across their actual time worked. *See Adair v. City of Kirkland*, 185 F.3d 1055, 162 at fn. 6 (9th Cir. 1999), *citing Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986). *See also, Conner v. Cleveland Cty., N.C.,* 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

52.    Plaintiff, and similarly situated CSRs, regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

53.    During the weeks that CSRs do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's contracts with its CSRs.

**E. Defendant Benefitted from the Uncompensated Off-the-Clock Work**

54.    At all relevant times, Defendant has required and directly benefitted from the off-the-clock work performed by Plaintiff and all other CSRs in connection with pre-shift, mid-shift, and post-shift activities described above.

55.    At all relevant times, Defendant has controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other CSRs.

56.    At all relevant times, Defendant has been able to track the amount of time Plaintiff and all other CSRs spend in connection with pre-shift, mid-shift, post-shift activities; however, Defendant has failed to do so and has failed to compensate

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff and all other CSRs for the off-the-clock work they performed.

57.    At all relevant times Plaintiff and all other CSRs have been non-exempt hourly employees, subject to the requirements of the FLSA.

58.    At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the other CSRs in order to pressure them into performing with pre-shift, mid-shift, post-shift work off-the-clock.

59.    Defendant expressly trained and instructed Plaintiff and all other CSRs to perform these off-the-clock work activities when they were not "clocked in" to Defendant's timekeeping system.

60.    Defendant instructed CSRs to have all work applications and systems fully loaded before the start of their shifts, which takes them in the range of ten (10) to fifteen (15) minutes per day, but Defendant prohibited CSRs from marking themselves "available" before the start of the scheduled shift.

61.    Additionally, Plaintiff and all other CSRs would have to return from their unpaid meal period early in order to have all work applications and systems fully loaded before resuming their shifts, which takes them in the range of three (3) to five (5) minutes per day.

62.    Similarly, at the end of the shift, Defendant instructed CSRs to clock out before closing all work applications and systems to make certain they are "clocked out" the moment they stop fielding calls, which takes them in the range of five (5) to seven (7) minutes per day.

**CLASS AND COLLECTIVE ACTION COMPLAINT**

63. At all relevant times, Defendant's policies and practices deprived Plaintiff and the CSRs of wages owed for off-the-clock pre-shift, mid-shift, and post-shift activities they performed. Because Defendant's CSRs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

64. Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

65. Defendant has known or should have known that the time spent by Plaintiff and other CSRs in connection with the off-the-clock pre-shift, mid-shift, and post-shift activities is compensable under the law.

66. Despite knowing CSRs performed off-the-clock work before and during their shifts, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

67. Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

68. As a result of these *prima facie* FLSA violations, Defendant is liable to Plaintiff and those similarly situated for unpaid wages, liquidated damages, reasonable attorney's fees and costs, interest, and any other relief deemed

**CLASS AND COLLECTIVE ACTION COMPLAINT**

appropriate by the Court.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

69.     Pursuant to 29 U.S.C § 216(b), Plaintiff brings this action on behalf of herself and on behalf of:

> *All current and former hourly Customer Service Representatives who worked for Defendant at any time during the past three years.*

70.     Plaintiff and putative Collective members are "similarly situated" as that term is used in 29 U.S.C § 216(b) because, among other things, all such individuals (a) have been or are employed in the same or similar positions; (b) were or are performing the same or similar job duties; (c) were or are subject to the same or similar unlawful practices, policies, or plans; and (d) have claims based upon the same factual and legal theories.

71.     Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

72.     Resolution of this action requires inquiry into common facts.

73.     These similarly situated individuals are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

**CLASS AND COLLECTIVE ACTION COMPLAINT**

74.     Conditional certification of this case as a collective action pursuant to 29 U.S.C § 216(b) is proper and necessary so that these employees may be readily notified of this action through direct U.S. mail and/or other means including email and allowed to opt in for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA.

75.     Upon information and belief, there are hundreds of similarly situated current and former employees of Defendant who were not paid their required wages and who would benefit from the issuance of court-authorized notice of this lawsuit and the opportunity to join it.

## **RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

76.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> ***All current and former hourly Customer Service Representatives who worked for Defendant at any time during the past three years.***

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiff reserves the right to amend this definition if necessary.

77.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members.  Rule 23 Nationwide Class members should be easy to identify from

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Defendant's computer systems and electronic payroll and personnel records.

78.     There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual questions, include, but are not limited to, the following:

    a.  Whether the pre-shift time Rule 23 Nationwide Class members spent on starting up and logging into their computers each shift was compensable;

    b.  Whether the mid-shift time Rule 23 Nationwide Class members spent returning from their meal break to reboot all necessary programs, applications and software was compensable;

    c.  Whether t he post-shift time Rule 23 Nationwide Class members spent logging out of programs and software and safely shutting down their computers was compensable;

    d.  Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

    e.  Whether Defendant's non-payment of wages for all compensable time resulted in Defendant being unjustly enriched.

79.     Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Nationwide Class members.

80.     Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and she retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

81.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

82.     This case will be manageable as a Rule 23 Class action.  Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

83.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

**CLASS AND COLLECTIVE ACTION COMPLAINT**

84.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

85.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

86.    At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

87.    Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

88.    At all times relevant to this action, Plaintiff and the proposed Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

89.    Plaintiff and the proposed Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees and were classified as such.

90.    Plaintiff and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

**CLASS AND COLLECTIVE ACTION COMPLAINT**

91.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

92.    At all times relevant to this action, Defendant required Plaintiff and the proposed Collective members to regularly perform ten (10) to fifteen (15) minutes or more of pre-shift computer boot-up and login time per shift, three (3) to five (5) minutes or more mid-shift computer boot-up and login time per shift, and five (5) to seven (7) minutes or more post-shift computer shut down time per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

93.    All of the off-the-clock worked performed by Plaintiff and the proposed Collective members could have easily been tracked and recorded by Defendant, but was not.

94.    In the aggregate, the amount of Plaintiff's and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

95.    In workweeks where Plaintiff and the proposed Collective members worked forty (40) hours or more, the uncompensated pre-, mid-, and post-shift off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regularly rate of pay.  29 U.S.C. § 207.

**CLASS AND COLLECTIVE ACTION COMPLAINT**

96.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its CSRs to complete the pre-shift boot-up and log-in process and the mid-shift login process, as well as the post-shift shutdown process, and Defendant could have properly compensated Plaintiff and the proposed Collective members for the boot-up, login, and shutdown work they performed, but did not. Likewise, Defendant knew or could have easily determined how to perform the correct FLSA regular rate calculations.

97.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiff and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Nationwide Class Action)**
**BREACH OF CONTRACT**

98.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

99.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

**CLASS AND COLLECTIVE ACTION COMPLAINT**

100.    Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares and maintains as part of its regular business activities.

101.    For example, Defendant offered to compensate Plaintiff at a minimum of $21.00 per hour if she agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed her duties as a CSR in reliance on the offer.

102.    Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for all hours worked.

103.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $21.00 per hour within the applicable period.

104.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid-, and post-shift work and technical downtime described herein.

105.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically

**CLASS AND COLLECTIVE ACTION COMPLAINT**

breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

106.    Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

107.    Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims).

108.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

109.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

## COUNT III
### (Rule 23 Nationwide Class Action)

### NATIONWIDE UNJUST ENRICHMENT

110.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

**CLASS AND COLLECTIVE ACTION COMPLAINT**

111.    This Count is pleaded in the alternative to Count II pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

112.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

113.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

114.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

115.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

116.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

117.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

**CLASS AND COLLECTIVE ACTION COMPLAINT**

118.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

119.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

a.    An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

c.    An Order compelling Defendant to disclose in computer format, or in print if no computer-readable format is available, the names, addresses and e-mails of all proposed FLSA Collective members and Rule 23 Nationwide Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class and collective members of their rights by law to join and participate in this lawsuit;

d.    An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel                for                the                same;

**CLASS AND COLLECTIVE ACTION COMPLAINT**

e.   An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.   An Order declaring Defendant's violations of the FLSA were willful;

g.   An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

h.   An Order declaring Defendant was unjustly enriched by the off-the-clock work performed by Plaintiff and the members of the Rule 23 Nationwide Class;

i.   An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

j.   An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

k.   An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

l.   An Order awarding such other and further relief as this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Respectfully submitted,

/s/ Kevin J. Stoops

Kevin J. Stoops (State Bar #332200)
SOMMERS SCHWARTZ, P.C.
1801 Century Park East, Ste. 860
Los Angeles, CA 90067
Telephone: (310) 579-0600
Email: kstoops@sommerspc.com

Attorneys for Plaintiff JEANNE
BATCHELDER

**CLASS AND COLLECTIVE ACTION COMPLAINT**